# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GREAT LAKES YACHT SALES, INC.,**

                Plaintiff,

     v.                                        Case No. 19-cv-1543

**SEABRING MARINE INDUSTRIES, INC.
d/b/a MONTEREY BOATS,**

                Defendant.

## ORDER DENYING MOTION TO DISMISS

Plaintiff Great Lakes Yacht Sales, Inc. (Great Lakes) filed a complaint against defendant Seabring Marine Industries, Inc., d/b/a Monterey Boats (Monterey) alleging a violation of chapter 135 of the Wisconsin Statutes, known as the Wisconsin Fair Dealership Law (WFDL). Monterey has filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 4.) The motion is fully briefed and ready for resolution. All parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 9.)

1. Facts

The following facts are taken from the complaint (ECF No. 1-1 at 3-7) and the court accepts them as true for purposes of the defendant's motion to dismiss. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Great Lakes is in the business of selling luxury yachts, service, and parts. Monterey is a manufacturer of luxury yachts. On August 30, 2016, Great Lakes and Monterey entered into an agreement entitled, "Dealer Agreement." Pursuant to the Dealer Agreement, Monterey granted Great Lakes the right to serve as one of Monterey's retail dealers in Kenosha, Wisconsin.

Pursuant to the Dealer Agreement, Great Lakes was required to: "maintain suitable facility, inventory, and trained personnel for the selling, service, repair and promotion of Monterey boats"; pay for products purchased by Great Lakes at the time of delivery; purchase from Monterey certain advertising displays and other materials as may be made available by Monterey; "purchase and carry on hand at all times inventory of Monterey's current boat model and related items sufficient to adequately represent Monterey's product line and to service owners of Monterey boats." Title and risk of loss to Monterey products purchased by Great Lakes passed to Great Lakes upon delivery to a common carrier or to Great Lakes. And Monterey granted Great Lakes a non-exclusive right to display and use trademarks, service marks, tradenames and/or design marks owned by Monterey in connection with the sale of Monterey products.

In connection with becoming a dealer, Great Lakes agreed to purchase seven yachts from Monterey. Great Lakes opening order consisted of five luxury yachts.

Great Lakes alleges that it is a "dealer" as that term is defined in the WFDL, and the Dealer Agreement is a dealership agreement as that term is defined in the WFDL.

On March 13, 2019, Monterey gave Great Lakes notice of termination effective April 12, 2019. As of the effective date of termination, Great Lakes had in its inventory two Monterey boats. The price for the two boats totaled $519,506.02. Great Lakes demands that Monterey repurchase the two boats, but Monterey has refused.

**2. Analysis**

Great Lakes contends that Monterey's refusal to repurchase the two boats violates the WFDL. Rule 8 of the Federal Rules of Civil Procedure states in relevant part:

(a) Claim for Relief. A pleading that states a claim for relief must contain:

\*\*\*

(2) a short and plain statement of the claim showing that the pleader is entitled to relief….

"The statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (modifications omitted)). "[S]pecific facts are not necessary." *Id.* But a pleading that offers mere "labels and conclusions" or

"a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Iqbal*, 556 U.S. at 679. Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A "dealership" within the meaning of the WFDL is defined as

> a contract or agreement, either expressed or implied, whether oral or written, between two or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or

distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

Wis. Stat. § 135.02(3). The term "community of interest" means "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services." Wis. Stat. § 135.02(1). In *Ziegler Co. v. Rexnord*, 139 Wis. 2d 593, 407 N.W.2d 873 (1987), the Wisconsin Supreme Court "established two guideposts, which, 'if satisfied, would lead to the conclusion that the parties shared a community of interest': a continuing financial interest and interdependence." *Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶12, 328 Wis. 2d 717, 789 N.W.2d 595 (quoting *Cent. Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶¶31-32, 272 Wis. 2d 561, 681 N.W.2d 178). "Interdependence is 'the degree to which the dealer and grantor cooperate, coordinate their activities and share common goals in their business relationship.'" *Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶12, 328 Wis. 2d 717, 789 N.W.2d 595 (quoting *Ziegler*, 139 Wis. 2d at 605). "When construed together, these guideposts must reveal an interest in a business relationship great enough to threaten the financial health of the dealer, if the grantor were to decide to exercise its power to terminate." *Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶12, 328 Wis. 2d 717, 789 N.W.2d 595 (quoting *Central Corp.*, 272 Wis. 2d 561, ¶32).

To assess these "guideposts," the Wisconsin Supreme Court articulated ten non-exhaustive "facets" for courts to consider:

> [1] how long the parties have dealt with each other; [2] the extent and nature of the obligations imposed on the parties in the contract or agreement between them; [3] what percentage of time or revenue the alleged dealer devotes to the alleged grantor's products or services; [4] what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; [5] the extent and nature of the alleged grantor's grant of territory to the alleged dealer; [6] the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); [7] the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; [8] the personnel which the alleged dealer devotes to the alleged dealership; [9] how much the alleged dealer spends on advertising or promotional expenditures for the alleged grantor's products or services; [and] [10] the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services.

*Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶13, 328 Wis. 2d 717, 789 N.W.2d 595 (quoting *Ziegler*, 139 Wis. 2d at 606); *see also* Wis. JI—Civil 2769.

Monterey moves to dismiss Great Lakes' complaint because it does not allege the two "guideposts" necessary to establish a "community of interest."

Although Great Lakes must satisfy the *Ziegler* guideposts and establish a community of interest to prevail on its WFDL claim, it need not plead such facts in order to state a claim. "Facts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.'" *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923-24 (7th Cir. 2007). At the pleading stage the question is not one of specificity but plausibility. Is it plausible that Great Lakes and Monterey shared a "community of interest"? Or, more to the point,

based on the allegations in the complaint, is it plausible that Great Lakes had a relationship with Monterey such that Monterey's termination of the dealership would threaten Great Lakes' financial health?

Great Lakes' complaint contains allegations sufficient to indicate that the parties' relationship is plausibly covered by the WFDL, including: Great Lakes "was required to 'maintain suitable facility, inventory, and trained personnel for the selling, service, repair and promotion of Monterey boats" (ECF No. 1-1, ¶ 7); it was "required to identify itself as a Monterey dealer and to 'aggressively sell, display, advertise and promote the sale of Monterey products within its market area'" (ECF No. 1-1, ¶ 10); it "was required to 'purchase and carry on hand at all times inventory of Monterey's current boat model and related items sufficient to adequately represent Monterey's product line and to service owners of Monterey boats'" (ECF No. 1-1, ¶ 11); and it was granted a "non-exclusive privilege of displaying and using trademarks, service marks, tradenames and/or design marks owned by Monterey in connection with the sale of Monterey products" (ECF No. 1-1, ¶ 12).

Admittedly, the complaint is silent as to many of the facets relevant to whether an entity is a dealer under the WFDL. But the absence of any facet does not necessarily negate Great Lakes' claim. No facet is dispositive, but instead all must be weighed by the trier of fact. *Cent. Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶35, 272 Wis. 2d 561, 681 N.W.2d 178. Whether Great Lakes will ultimately be able to prove that it is a "dealer" for

7

Case 2:19-cv-01543-WED    Filed 01/17/20    Page 7 of 8    Document 12

Monterey products as that term is defined in the WFDL is not, at this stage, the issue. The pleading stage is not the appropriate time to assess such questions. *Skier's Choice, Inc. v. Skipper Marine & Affiliates, Inc.*, No. 11-cv-6006, 2012 U.S. Dist. LEXIS 67659, at *10-11 (N.D. Ill. May 15, 2012) (denying motion to dismiss WFDL claim, stating, "While the complaint does not contain numerous details explaining the exact nature of the relationship between Skipper Marine and Skier's Choice or the extent to which Skipper Marine does business in Wisconsin, the pleading stage is not the proper place to evaluate these issues.") At this stage, there are two questions. First, does the complaint provide Monterey with both fair notice of Great Lakes' claim and the grounds upon which that claim rests? It does. Second, is it plausible that Great Lakes would be able to prove its claim. It is.

**IT IS THEREFORE ORDERED** that Monterey's motion to dismiss (ECF No. 4) is **DENIED**.

Dated at Milwaukee, Wisconsin this 17th day of January, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge